1  ROBERT A. CURTIS (203870)
2  *rcurtis@foleybezek.com*
   FOLEY BEZEK BEHLE & CURTIS, LLP
3  15 West Carrillo Street
   Santa Barbara, California 93101
4  Telephone: (805) 962-9495
   Facsimile: (805) 962-0722
5
6  Additional Counsel Listed on Following Page
7  ATTORNEYS FOR PLAINTIFF
8
9
10              **UNITED STATES DISTRICT COURT**
11             **NORTHERN DISTRICT OF CALIFORNIA**
12
   BORIS BINDMAN, a California          Case No.
13 resident, individually and on behalf
   of similarly situated persons,
14                                       **COMPLAINT**
                  Plaintiff,            **[CLASS ACTION]**
15
16        v.                            **DEMAND FOR JURY TRIAL**
17
   MH SUB I, LLC (d/b/a Martindale-
18 Nolo Lead Generation Program,
   Martindale-Nolo Legal Marketing
19 Network, and Nolo Experthub), a
   Delaware Limited Liability
20 Company; INTERNET BRANDS,
   INC., a Delaware Corporation; and
21 DOES 1-30, inclusive,
22                  Defendants.
23
24
25
26
27
28

                          1
                 **CLASS ACTION COMPLAINT**

KEVIN D. GAMARNIK (273445)
*kgamarnik@foleybezek.com*
FOLEY BEZEK BEHLE & CURTIS, LLP
575 Anton Boulevard, Suite 710
Costa Mesa, California 92626
Telephone: (714) 556-1700
Facsimile: (714) 546-5005

WILLIAM M. ARON (234408)
bill@aronlawfirm.com
LAW OFFICE OF WILLIAM M. ARON
15 West Carrillo Street
Santa Barbara, California 93101
Telephone: (805) 618-1768
Facsimile: (805) 618 – 1580

**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

Plaintiff, Boris Bindman ("Plaintiff") brings this action against defendants MH Sub, I, LLC (d/b/a Martindale-Nolo Lead Generation Program, Martindale-Nolo Legal Marketing Network, and Nolo Experthub), Internet Brands, Inc. and Does 1-30, inclusive (collectively "Defendants").

### Introduction to the Case

1.      This is a proposed class action. Plaintiff, on behalf of himself and all similarly situated persons, and in the public interest, brings this action seeking, among other things, injunctive relief, monetary damages, restitution, and costs and attorneys' fees based on Defendants' acts and omissions. Additionally, Plaintiff seeks relief for a nationwide class based on (a) breach of contract, (b) breach of the implied covenant of good faith and fair dealing, (c) unjust enrichment/quasi-contract, (d) violation of the Unfair Competition Law, and (e) violation of the Consumer Legal Remedies Act ("CLRA").

2.      Defendants run a fraudulent and deceptive scheme that preys on attorneys. In this scheme, Defendants promise and represent that they will generate and provide reliable and satisfactory leads for their attorney-customers, identifying criteria that set forth what is an unsatisfactory lead (e.g., leads seeking assistance outside of the geographic scope of the attorneys' subscription ); in the event a lead is unsatisfactory under Defendants' criteria, the attorney-customer may report the improper lead and obtain a credit.  Defendants represent that when a bad lead is reported, they will follow certain steps to ascertain whether the lead is satisfactory. However, Defendants do not follow their own protocol as promised, and instead, systematically reject each (or at least the majority of) lead credit requests, despite being unsatisfactory under Defendants' own objective criteria (e.g., invalid telephone number provided, making it impossible to make contact with the lead, etc.).

3.      Plaintiff's counsel is informed and believes, based on discussions

with at least one of Defendants' sales representatives, that the automatic denial of lead credit requests is a common practice and occurrence instituted to increase revenue. Defendants' objective is to make the reporting process so cumbersome that their attorney-customers eventually stop complaining, and Defendants retain more ill-gotten revenue. By setting forth objective criteria to determine the sufficiency of a lead, Defendants' purpose is also to create an aura of legitimacy surrounding its leads, although Defendants know that many of its leads are bogus.

## Parties

4.    Plaintiff Boris Bindman ("Plaintiff") is a resident of San Leandro, California.

5.    MH Sub, I, LLC (d/b/a Martindale-Nolo Lead Generation Program, Martindale-Nolo Legal Marketing Network, and Nolo Experthub) is a Delaware limited liability company, with its principal place of business in El Segundo, California. It appears that MH Sub, I, LLC is a subsidiary of Internet Brands, Inc.

6.    Internet Brands, Inc. ("Internet Brands") is a Delaware Corporation, with its principal place of business in El Segundo, California.

7.    Plaintiff signed up for the Martindale-Nolo Lead Generation Program ("Program") through the Martindale-Nolo Legal Marketing Network. The Martindale-Nolo Lead Generation Program has an address in Pleasanton, California. Payments were made to Nolo Experthub.

8.    It is not entirely clear to Plaintiff whether the Martindale-Nolo Lead Generation Program and/or Martindale-Nolo Legal Marketing Network and/or Nolo Experthub are independent, stand-alone entities, or are businesses of either MH Sub, I, LLC or Internet Brands, Inc. It appears online that the "Martindale" and the "Nolo" trade names are owned by MH Sub, I, LLC. But, the Internet Brands website identifies "Martindale Hubbell" and "Nolo" as one of "our brands". For purposes of pleading, Plaintiff will identify Martindale-Nolo Lead Generation Program, Martindale-Nolo Legal Marketing Network, and Nolo

Experthub as dbas of MH Sub, I, LLC.  In the event it is revealed during discovery that Martindale-Nolo Lead Generation Program and/or Martindale-Nolo Legal Marketing Network and/or Nolo Experthub are independent, stand-alone entities, or are not otherwise dbas of MH Sub, I, LLC, Plaintiff will amend the Complaint.

9.    At all times material to this Complaint, acting alone or in concert with others, Defendants formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

10.    Because Defendants operated as a common enterprise, each party is jointly and severally liable for the acts and practices alleged.

11.    Plaintiff is unaware of the true names, identities and capacities of all of the Defendants sued herein as Does 1 through 30. When a name or capacity is known, Plaintiff will amend this Complaint to allege the true names and capacities of Does 1 through 30.

12.    Plaintiff is informed and believes, and thereupon alleges, that each of the Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings set forth herein and have proximately caused injuries and damages to Plaintiff as set forth below.

13.    Defendants, and each of them, carried out their acts both directly and/or through the acts and/or omissions of their agents, independent contractors, servants and/or employees, who at all times were acting within the course and scope of said agency, independent contractor agreement, and/or employment and the acts and omissions of said agents, independent contractors, servants and/or employees were authorized and ratified by all other said Defendants.

14.    Whenever this Complaint references the acts, omissions or representations of any Defendant or Defendants, such allegation shall be deemed to mean the act, omission or representation of those Defendants named in the particular cause of action and each of them acting individually, jointly, and severally and/or in concert with the other Defendant(s).

**CLASS ACTION COMPLAINT**

15.     To the extent that any of the claims alleged herein are barred by any limitations rules, such claims are equitably tolled against Defendants and/or Defendants are equitably estopped from asserting such limitation defense, given Defendants ongoing misrepresentations and concealment of material fact alleged herein.

## **Jurisdiction and Venue**

16.     The Court has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the suit is a class action, the parties are minimally diverse, and the amount in controversy exceeds $5,000,000, excluding interest and costs. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

17.     This Court has personal jurisdiction over Defendants because they have sufficient minimum contacts with California and within this District because, among other things, (i) the Martindale-Nolo Lead Generation Program has its headquarters in this District, (ii) MH Sub, I, LLC and Internet Brands, Inc., have their headquarters in this state, (iii) Defendants' decisions to implement the deceptive scheme identified in this Complaint were made in this state, (iv) Defendants transact a substantial amount of business in California, including within this District, and (v) Defendants have each purposefully availed themselves of the laws and markets of this District through the promotion, sale, and distribution of their services from within California and within this District.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because a substantial number of the acts, omissions, and transactions that establish the claims of Plaintiff and the Class occurred within this District. Defendants conducted business and solicited business within this District. And, Defendants transacted their affairs and resided within California.  And, the Martindale-Nolo Lead Generation Program has its headquarters in this District.

**CLASS ACTION COMPLAINT**

### The Facts

#### *Defendants' Lead Credit Criteria*

19.     Internet Brands represents that it owns a variety of websites, spanning multiple industries, including, automotive (e.g., CarsDirect.com), home and travel (e.g., Fodortravel.com), health (WebMD.com), and legal. As to the legal industry, Internet Brands owns sites such as Martindale Hubbell, Martindale-Avvo, Avvo, Nolo, Lawyers.com, AllLaw.com, and others.

20.     The Martindale-Nolo lead generation program (the "Program") offers a pay-per-lead program, where, by using the traffic generated through other Internet Brands websites (Nolo.com, Drivinglaws.com, DisabilitySecrets.com, among others), leads are generated and sold to attorneys through the Program.

21.     Defendants market the Program to its attorney-customers by touting that every month, over 15 million consumers visit their network of legal websites, and that 100,000 of those visitors request to speak to an attorney.  As marketed, consumers that are researching specific legal issues will come across an article that leads them to one of the aforementioned Internet Brands websites regarding legal issues.  When on one of the sites, the consumer may decide that he/she should speak with an attorney.  That consumer then fills out a form, identifies the legal issue, and provides his/her contact information. That singular contact information is then generally sold to numerous attorneys participating in the Program, with each Attorney furnishing separate consideration for that very same lead (presumably all within the same area of practice and geographic scope as the potential matter). This allows Defendants to monetize each individual lead multiple times.

22.     Defendants offer their attorney-customers different payment options, including a "pay-per-lead" or flat rate option.  As to the "pay-per-lead" option, an attorney registering for the Program typically negotiates a price per lead—e.g., $100.00—depending on the area of practice and geographic scope.  The attorney

**CLASS ACTION COMPLAINT**

then makes an initial deposit (e.g., $1,000), from which money is deducted per lead. For example, an attorney may make an initial deposit of $1,000. For each lead that attorney receives through the Program, $100.00 is deducted from the $1,000. When the initial deposit is exhausted, Defendants charge the attorney another $1,000, (or whatever amount is agreed to replenish the retainer from which lead payments are deducted).

23.    Defendants represent that if any of the leads that are provided fall within any of the following objective criteria, and are timely disputed by the attorney, then the attorney will receive a credit for the amount that Defendants erroneously charged for that objectively deficient lead (e.g., $100.00):

    a.    Spam lead (ex: contact name Mickey Mouse, someone trying to sell you something, etc.);

    b.    Lead submitter is under the age of 18;

    c.    Disconnected phone #;

    d.    Wrong/Invalid phone #;

    e.    Lead submitter denies submitting the lead (ex: you spoke with the consumer and they state they never submitted their information);

    f.    Lead is out of the attorney's subscribed geographic area – must be supported in case description (ex: attorney subscribed to New York County; consumer submits lead for NY county zip but DUI occurred in PA);

    g.    Lead is not within the attorney's subscribed practice area – must be supported in case description (ex: Divorce lead sent to a Bankruptcy attorney);

    h.    Duplicate lead (duplicate received within 30 days of the original lead receipt; source must be a Martindale-Nolo network site for both leads). See **Exhibit A**.

    i.    Defendants represent that they will take the following steps to

**CLASS ACTION COMPLAINT**

evaluate the lead credit request:

    j.    Review the contact information;

    k.    Review the case description information;

    l.    Attempt to speak with the consumer;

    m.    If we are unable to speak with the consumer, we will validate whether the email address is active.  **See Exhibit A**.

24.    However, Defendants, rather than taking the aforementioned steps as to each lead credit request, systematically deny the lead credit requests, even when the lead does not satisfy Defendants' own criteria to establish validity.

25.    Defendants do not proactively provide any credit to other customer accounts for defective leads they sold many times over, even after another attorney-customer lodged a timely valid complaint, giving Defendants actual notice that the lead they sold multiple times was invalid.

### ***Boris Bindman Facts***

26.    Plaintiff Boris Bindman is an attorney practicing both DUI/DWI defense and criminal defense in the Oakland, California area. Mr. Bindman on-boarded into the Program on or about August 30, 2018.  He made an initial deposit and agreed to an auto-renewal amount. Mr. Bindman's designated geographic scope with Nolo was exclusively limited to prospective clients actively seeking legal services within his pre-defined practice areas in Alameda County only. Mr. Bindman agreed to two different lead prices—one for DUI/DWI leads, and another for criminal defense leads.[1]

27.    Quickly, after on-boarding, Mr. Bindman began receiving unsatisfactory leads that objectively qualified for credits. Mr. Bindman timely submitted his lead credit requests, but Defendants systematically rejected them.

---

[1] While Plaintiff does not believe that the initial deposit, auto-renewal amount, or the price per lead that he negotiated is confidential, in an abundance of caution, Plaintiff is not disclosing in a publicly filed document these amounts.  In the event that Defendants take the position that these amounts must be pleaded, then Plaintiff will amend the Complaint.

**CLASS ACTION COMPLAINT**

For example,

    a.   Mr. Bindman complained that "the lead/request for services was for an immigration attorney for an immigration detention hold proceeding in Fresno, CA and not for a criminal defense attorney in Alameda County". Although at least two criteria supporting a credit were met—e.g., different practice area, outside of the geographic scope—on October 26, 2018, Defendants denied the credit request on the grounds that there was "Not a Valid Reason Under the Lead Credit Policy."

    b.   Mr. Bindman complained that the "Lead is out of subscribed geography" because "the incident occurred in Santa Clara County and that her scheduled appearance is before the Santa Clara Superior Court (i.e., not in Alameda County"). On November 16, 2018, Defendants denied the request on the ground that "Not a Valid Reason Under Lead Credit Policy."

    c.   Mr. Bindman complained that the "Lead is out of subscribed geography" because "[t]he request for services specifically states that its for representation in Santa Barbara." On October 26, 2018, Defendants again denied the credit request on the ground that it was "Not a Valid Reason Under Lead Credit Policy".

    d.   Defendants refused to issue a credit when the case description of a lead provided on December 26, 2018 clearly expressed that the work was outside the scope of Alameda County: "I was arrested due to two warrants in Los Angeles County I believe 7 or 8 years ago".

    e.   Mr. Bindman complained that "…this is not a defendant or an accused seeking legal advice or representation. Rather, this is a witness to a crime who needs to reach out to law enforcement to

effectuate his desire to report a crime." On January 16, 2019, Defendants denied the request on the grounds of "Other. Could not authenticate request."

f.  Mr. Bindman complained that the lead is "Spam", because "[t]here is no request for legal services, just a non-sensical catch phrase." On December 14, 2018, Defendants denied the request on the grounds that it is "Not Spam."

g.  Mr. Bindman further complained that lead was "Spam" because "[t]he case description is solely as follows: 'Hi Stephanie'. This lead appears to have been erroneously submitted, and multiple attempts to contact the lead at the provided number and email have been unsuccessful." On November 14, 2018, Defendants denied the request simply on the grounds that it was "Not Spam."

### ***Defendants' Deceitful Conduct is Widespread***

28.  Defendants denials are systematic. Plaintiff is informed and believes, based on Plaintiff's counsel's discussions with a representative of Defendants, that Defendants systematically deny each lead credit request, and that this has been an ongoing practice employed to aggressively bolster revenue ever since Internet Brands acquired the Nolo and/or Martindale businesses.

29.  A number of online complaints on Yelp.com confirm that Defendants' denials are systematic:

a.  Burke B from Dallas, Texas states on Yelp that "The absolute worst about NOLO is that it is impossible to receive credit for a bad lead (phone number disconnected especially)";

b.  Carl S, from El Cajon, California states on Yelp that "Most of the leads are simply garbage. I experience a large number of lead[s] to bad phone numbers … I couldn't even verify if they were good numbers because most [of] these people don't return phone calls

11

and do not respond to emails. [¶] On multiple occasions, I disputed leads for bad phone numbers. Nolo would then claim to have made contact with these people who supposedly would s[]ay they were still waiting to hear from me. Nolo's claims were not believable."

c.  Dan P. from Wilmette, Illinois, confirms on Yelp that he "ha[s] similar experiences to the other attorneys that have posted comments."

d.  Leonard J from Columbia, South Carolina, also states on Yelp that "After I contracted with Martindale-Nolo Legal Marketing Network to obtain leads of potential clients, it quickly became evident that the leads I received were not of the quality, which I was led by the marketing rep to expect. Not a single lead provided to me resulted in a paying client or any other benefit. After complaining with no resolution, I sued the company and obtained a Judgment, including treble damages under the South Carolina Unfair Trade Practices Act."

e.  An unidentified person from Denton, Texas, states on Yelp that "[t]he lead credit process is onerous, ridiculously time consuming and often results in their rejecting a valid objection."

### ***Class Action Allegations***

30.    Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23.

31.    Plaintiff seeks to represent a nationwide class defined as follows:

"All attorneys and law firms who paid Defendants for leads." Excluded from the class are attorneys for Plaintiffs, the Defendants and their officers and directors, family members, legal representatives, heirs, successors or assigns.

**CLASS ACTION COMPLAINT**

32.     Plaintiff seeks relief for themselves and all members of the class.

33.     While the exact number of members in the Class are unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendants. It is estimated that the members of the Class exceed 1,000 individuals/firms. Therefore, the Class is so numerous that individual joinder of all Class members is impracticable under Fed. R. Civ. P. 23(a)(1).

34.     There are questions of law and/or fact common to the class including but not limited to:

a.     Whether Defendants misrepresented that as to each lead credit request submitted, the process is to (a) review the contact information, (b) review the case description information, (c) attempt to speak with the consumer, (d) validate whether the email address is active;

b.     Whether Defendants systematically deny lead credit requests;

c.     Whether Defendants have a policy that lead credit request should be systematically denied;

d.     Whether Defendants breached a contract by failing to abide by their own lead credit request guidelines;

e.     Whether Defendants breached the covenant of good faith and fair dealing;

f.     Whether Defendants were unjustly enriched;

g.     Whether it was deceptive to systematically deny lead credit requests;

h.     Whether it was unfair to systematically deny lead credit requests;

i.     Whether Defendants' conduct constitutes an unlawful, unfair and/or deceptive trade practice under California state law; and

j.     Whether Defendants' conduct constitutes false advertising under

**CLASS ACTION COMPLAINT**

California state law.

35.    These and other questions of law and/or fact are common to the class and predominate over any question affecting only individual class members.

36.    Plaintiff's claims are typical of the claims of the class in that, among other things, Plaintiff and other class members were exposed to the misrepresentation that Defendants would take very specific steps to evaluate a lead credit request, although, Defendants never actually took such steps, but instead, systematically denied the requests.

37.    Plaintiff will fairly and adequately represent the interests of the class. Plaintiff's claims are typical of those of the class. Plaintiff's interests are fully aligned with those of the class. And Plaintiff has retained counsel experienced and skilled in complex class action litigation.

38.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged, because such treatment will allow many similarly-situated persons to pursue their common claims in a single forum simultaneously, efficiently and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

39.    Plaintiff knows of no difficulty likely to be encountered in the management that would preclude its maintenance as a class action.

### FIRST CLAIM FOR RELIEF

### (BREACH OF CONTRACT)

### Against Defendants

### (On Behalf of the Class)

40.    Plaintiff realleges and incorporates all allegations above.

41.    Plaintiff and Defendants formed a written contract whereby Defendants expressly agreed that they would (a) provide leads in the DUI and DWI field exclusively in Alameda County , and (b) provide leads in the criminal defense field exclusively in Alameda County . Plaintiff paid consideration.

42.     Moreover, Plaintiff and Defendants formed a written contract, whereby, Defendants expressly agreed that if any of the leads that were provided fell within any of the following criteria, and were reported timely , then the attorney would be entitled to receive a credit for the amount that Defendants charged for that lead (e.g., $50.00):

      a.   Spam lead (ex: contact name Mickey Mouse, someone trying to sell you something, etc.);

      b.   Lead submitter is under the age of 18;

      c.   Disconnected phone #;

      d.   Wrong/Invalid phone #;

      e.   Lead submitter denies submitting the lead (ex: you spoke with the consumer and they state they never submitted their information);

      f.   Lead is out of the attorney's subscribed geographic area – must be supported in case description (ex: attorney subscribed to New York County, consumer submits lead for NY county zip but DUI occurred in PA);

      g.   Lead is not within the attorney's subscribed practice area – must be supported in case description (ex: Divorce lead sent to a Bankruptcy attorney);

      h.   Duplicate lead (duplicate received within 30 days of the original lead receipt, source must be a Martindale-Nolo network site for both leads).

43.     Defendants further agreed that in the event of a dispute, it would take the following steps to evaluate the lead credit request:

      a.   Review the contact information;

      b.   Review the case description information;

      c.   Attempt to speak with the consumer;

      d.   If we are unable to speak with the consumer, we will validate

15

**CLASS ACTION COMPLAINT**

1    whether the email address is active.

2    44.    The terms of the aforementioned written contract pleaded in

3    paragraphs 42-43 above are set forth in **Exhibit A**.

4    45.    To the extent that Defendants did not expressly agree to the terms set

5    forth in **Exhibit A**, then these promises were implied by Defendants' conduct.

6    46.    Plaintiff fulfilled all of his obligations required under the contract

7    and complied with any and all conditions and agreements of the contract that he

8    was required to perform.

9    47.    Defendants unequivocally breached the contract by, among other

10    things, failing to provide a credit for purported leads that fell within one of the

11    categories identified above (e.g., outside of the geographic scope, outside of the

12    practice field), and by failing to follow the steps that it was contractually obligated

13    to follow for each lead dispute. Defendants' breach was unexcused.

14    48.    As a direct and proximate cause, Plaintiff was damaged as a result of

15    the breach in an amount to be proven at trial.

16                    **SECOND CLAIM FOR RELIEF**

17        **(BREACH OF THE COVENANT OF GOOD FAITH AND FAIR**

18                            **DEALING)**

19                        **Against Defendants**

20                      **(On Behalf of the Class)**

21    49.    Plaintiff realleges and incorporates all allegations above.

22    50.    Plaintiff and Defendants entered into a written agreement whereby

23    Defendants were to provide leads to Plaintiff. Specifically, for an initial deposit

24    payment, Plaintiff agreed to participate in the Program on a "pay-per-lead" basis.

25    Plaintiff agreed to two subscriptions. The first subscription was to receive leads in

26    the DUI and DWI field in the Alameda County region. The second subscription

27    was to receive leads in the Criminal Defense field in the Alameda County region.

28    51.    Plaintiff fulfilled all obligations required of him under the contract.

52.     Defendants unfairly interfered with Plaintiff's obligations under the contract. The agreement presupposed that Defendants would provide satisfactory leads to Plaintiff, consistent with the criteria set forth in **Exhibit A**. Defendants, however, instituted a system to systematically deny any disputes that would give rise to a lead credit.

53.     As a direct and proximate cause, Plaintiff has been damaged in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**(UNJUST ENRICHMENT/QUASI CONTRACT)**

**Against Defendants**

**(On Behalf of the Class)**

54.     Plaintiff realleges and incorporate all allegations above, save and except 1, 34(d), and 40-53. This claim is being alleged in the alternative to the breach of contract and breach of implied duty of good faith and fair dealing claim.

55.     Defendants have been unjustly enriched at the expense of the Plaintiff and the rest of the putative class members.  Defendants have received a benefit by receiving payment for leads that it knew were unsatisfactory and/or that it failed to investigate to determine whether such lead was satisfactory. Defendants also received a benefit by charging inflated rates for their leads, knowing that their leads were of a lower quality and often times objectively illegitimate.  Defendants received these benefits at the expense of the Plaintiff and the rest of the putative class members.

56.     Plaintiff seeks restitution of the amounts that were improperly received by Defendants at the expense of Plaintiff.

///

///

///

**CLASS ACTION COMPLAINT**

**FOURTH CLAIM FOR RELIEF**

**(Unfair and Deceptive Practices Claims Under**

**Cal. Bus, & Prof. Code § 17200, *et seq.*)**

**Against All Defendants**

**(On Behalf of the Class)**

57.     Plaintiff realleges and incorporates all allegations above.

58.     Defendants have engaged in constant unlawful, fraudulent, and unfair business acts or practices within the meaning of the California Business and Professions Code § 17200, *et seq.* The acts or practices alleged constitute a pattern of behavior, pursued as a wrongful business practice that has victimized, potentially, thousands of class members.

### *Defendants' Representations Regarding The Lead Credit Guidelines are Fraudulent*

59.     Under California Business and Professions Code § 17200, a "fraudulent" business practice is one that is likely to deceive the public.

60.     As detailed herein, Defendants, in order to induce more customers to purchase their lead generating services, and in order to maintain their customers, represented that they would take certain steps to evaluate each and every lead credit request: (a) review the contact information, (b) review the case description information, (c) attempt to speak with the consumer, (d) validate whether the email address is active.

61.     This representation, however, was fraudulent and deceptive, because Defendants knew that, when these guidelines were provided to Plaintiff and other class members, Defendants systematically denied most, if not all, of the lead credit requests, rather than proceeding through the aforementioned process. This representation was intended to, and did in fact, deceive the class members.  It was a representation that was likely to deceive the public.

62.     Plaintiff was misled by Defendants' fraudulent and deceptive

conduct. Had Plaintiff known the truth—e.g., that Defendants failed to follow their own process to evaluate lead credit requests, and instead, systematically denied each lead credit request—Plaintiff would not have signed up for the lead subscription service, or, at the very least, Plaintiff would not have paid the agreed premium for high lead quality and a fair credit policy.

63.    Defendants knew that its representation would in fact deceive the putative class members, inducing them to join the Program and then, thereafter, to continue paying Defendants for leads.  Defendants knew that their representation was creating an aura of legitimacy surrounding the leads.

64.    The fraudulent acts, representations, and omissions described herein were material not only to Plaintiff and the class, but also to reasonable persons.

### *Defendants' Sales and Marketing Plan is Unfair*

65.    Under California Business and Professions Code § 17200, a business practice is "unfair" if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury which outweighs its benefits.

66.    Defendant systematically denied the requests for lead credits, without vetting the legitimacy and veracity of the disputes. Such systematic denials, intended to make the process to receive a lead credit more cumbersome, so that Defendants could retain greater profits, constitute an unfair business practice.

67.    By refusing to issue a lead credit for credible disputes which clearly fell within the scope of circumstances where a refund was proper, Defendants acted unfairly, and in violation of the Unfair Competition Law.

68.    Defendants' conduct is unethical, oppressive, and unscrupulous in that they have been duping Plaintiff and the class out of millions of dollars.

69.    Defendants' actions have few, if any, benefits. Thus, the injury caused to Plaintiff and the class easily and dramatically outweighs the benefits, if any.

**CLASS ACTION COMPLAINT**

70.    Defendants should be made to, among other things, disgorge all ill-gotten gains and return to Plaintiff and the class all wrongfully taken amounts.

### ***Defendants' Conduct was Unlawful***

71.    As described in more detail in the Fifth Claim below, Defendants are in violation of the Consumer Legal Remedies Act.

72.    Finally, Defendants' unlawful, fraudulent and unfair acts and omissions will not be completely and finally stopped without orders of an injunctive nature. Under California Business and Professions Code § 17203, Plaintiff and the class seek a judicial order of an equitable nature against all Defendants, including, but not limited to, an order declaring such practices as complained of to be unlawful, fraudulent and unfair, and enjoining them from further undertaking any of the unlawful, fraudulent and unfair acts or omissions described herein.

### FIFTH CLAIM FOR RELIEF

### (Cal. Civ. Code § 1750, *et seq.*)

### Against All Defendants

### (On Behalf of the Class)

73.    Plaintiff realleges and incorporates all allegations above.

74.    Defendants' conduct violated one or more of the following provisions of the California Consumers Legal Remedies Act:

   a.    Cal. Civ. Code § 1770(a)(4) by using deceptive representations or designations of geographic origin in connection with services;

   b.    Cal. Civ. Code § 1770(a)(5) by representing that the services have characteristics or benefits that they do not have;

   c.    Cal. Civ. Code § 1770(a)(7) by representing that the services are of a particular standard, quality, or grade; and

   d.    Cal. Civ. Code § 1770(a)(9) by advertising services with intent not to sell them as advertised.

**CLASS ACTION COMPLAINT**

75.     Plaintiff and the class members are entitled to injunctive relief.

76.     Plaintiff has sent a demand letter pursuant to Cal. Civ. Code § 1782, and will amend the complaint to allege damages in the event that Defendants do not correct the services alleged to be violation of Cal. Civ. Code § 1770.

## **PRAYER FOR RELIEF**

The named Plaintiff and the class request the following relief:

a.      Certification of the class;

b.      A jury trial and judgment against Defendants;

c.      Except as to the claims based on violation of Cal. Civ. Code § 1770, damages for the financial losses incurred by Plaintiff and by the class because of the Defendants' conduct and for injury to their business and property;

d.      Except as to the claims based on violation of Cal. Civ. Code § 1770, restitution and disgorgement of monies;

e.      Injunctive relief requiring Defendants to cease all fraudulent, unlawful and unfair conduct;

f.      The cost of suit including reasonable attorneys' fees under Cal. Civ. Code § 1780(e), and otherwise allowed under law.

g.      For such relief and pre- and post-judgment interest as the Court may deem just and proper; and

h.      Any and all other relief the Court may find just and proper.


Dated: May 14, 2019                     FOLEY BEZEK BEHLE & CURTIS, LLP
                                        LAW OFFICE OF WILLIAM M. ARON

                                        By: */s/ Kevin D. Gamarnik*
                                            Robert A. Curtis
                                            Kevin D. Gamarnik
                                            William Aron
                                            *Attorneys for Plaintiff*

**CLASS ACTION COMPLAINT**

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: May 14, 2019                    FOLEY BEZEK BEHLE & CURTIS, LLP
                                       LAW OFFICE OF WILLIAM M. ARON

                                       By: */s/ Kevin D. Gamarnik*
                                           Robert A. Curtis
                                           Kevin D. Gamarnik
                                           William Aron
                                           *Attorneys for Plaintiff*

**CLASS ACTION COMPLAINT**