UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORIS BINDMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>MH SUB I, LLC, et al.,<br><br>    Defendants. | Case No. 19-cv-02614-SI<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>Re: Dkt. No. 29 |

Before the Court is a motion by defendant MH Sub I, LLC d/b/a Internet Brands ("Martindale") to compel arbitration. Dkt. No. 29 ("Motion"). Pursuant to Civil Local Rule 7-1(b), the Court finds the matter appropriate for resolution without oral argument and VACATES the December 20, 2019 hearing. Having considered the papers and for good cause shown, defendant's motion is DENIED. Additionally, plaintiff's objections to evidence are OVERRULED. Dkt. No. 34 at 31[1] ("Opp'n").

## BACKGROUND

This lawsuit arises from Mr. Bindman's purchase and use of Martindale's online lead generation services for attorneys. Motion at 11; *see also* Dkt. No. 1 ¶ 26 ("Complaint"). Martindale owns legal websites available to consumers. Dkt. No. 29-1 ¶ 2 ("Stack Decl."). Consumers visit Martindale's websites and can request to speak to an attorney. Complaint ¶ 21. Consumers seeking representation complete and submit a form identifying their legal issue and provide their contact information. *Id.* Martindale then connects attorneys with potential clients, called "leads." Stack

---

[1] For ease of reference, all page citations refer to the ECF branded number in the upper right corner of documents.

Decl. ¶ 2. When Martindale identifies a lead, it sends an attorney customer an email with the lead's name, contract information, and legal issue. *Id.* Attorney customers receive leads either on an individual ("pay-per-lead") basis or a flat rate. Complaint ¶ 22.

Plaintiff Mr. Bindman, an attorney, signed up for lead services on a "pay-per-lead" basis. Complaint ¶ 26. Plaintiff alleges that soon after submitting an initial deposit and agreeing to an auto-renewal amount, he received unsatisfactory leads. *Id.* at ¶¶ 26-27. If leads fall within certain criteria (*e.g.* incorrect contact information, lead is not within the attorney customer's subscribed legal or geographical practice area, etc.), the lead may be deemed deficient. *Id.* at ¶ 23. The attorney customer can dispute leads and, if deemed deficient, the attorney will receive a credit from Martindale for the deficient lead. *Id.* Plaintiff alleges he received deficient leads, timely disputed them, and requested credit, but Martindale systematically rejected his credit requests. Complaint ¶ 27.

Prior to signing up for its lead generation services, Martindale asserts plaintiff completed a "Contact Us" form on one of its websites. Motion at 11-12; Stack Decl. ¶ 7; Dkt. No. 29-1 at 27 (Ex. C – Entry #15361 Quick Contact Form). The "Contact Us" Form states that "[b]y clicking the 'Submit' button, you agree to the Terms of Use." Dkt. No. 29-1 at 14 (Ex. A – "Contact Us" Form):



The words "Terms of Use" hyperlink to a document titled "Terms of Use." *Id.* at 16 (Ex. B – Terms of Use). The Terms of Use state:

> These terms, including any schedules and supplemental terms (collectively, these "Terms of Use" or this "TOU") applies to our sites and services on which we display or post a direct link to this TOU. If there is any conflict between this TOU any supplemental terms to a site or service, the supplemental terms will control. This TOU does not apply to those sites and services that do not display or link to this TOU, or that have their own terms of use.

*Id.* The Terms of Use also contain a section titled "Dispute Resolution; Arbitration" that outlines a 30-day information resolution process followed by arbitration. *Id.* at 23. It states:

> If we are unable to mutually agree upon a resolution after the 30-day period, you agree that any claim you may have against us regarding these Terms of Use or our sites and services will be resolved through binding arbitration administered by JAMS and governed by the then current JAMS Streamlined Arbitration Rules and Procedures. . . . We prefer to resolve our issues with you directly and, accordingly, you agree to arbitrate with us only in your individual capacity, not as a representative or member of a class.

Dkt. No. 29-1 at 23 (Ex. B – Terms of Use). The Terms of Use designate Los Angeles County, California as a forum for any arbitration and that "any claims, causes of action or disputes not subject to Section 16 [sic] (Dispute Resolution; Arbitration) will be brought exclusively in courts located within the county of Los Angeles, California." *Id.* at 24.

Soon after Mr. Bindman contacted Martindale via the "Contact Us" Form, Martindale sent him an advertising proposal with the number of leads per month, the geographical and practice area parameters for leads, and the price per lead ("Advertising Proposal"). Motion at 15; Dkt. No. 29-1 at 29 (Ex. D – Advertising Proposal). The Advertising Proposal, shown below, includes language, under the title "Plan Summary and Terms" stating "Previous Terms and Conditions still apply." *Id.*

[Screenshot: Plan Summary and Terms — "This Contract amends the existing Contract Agreement between the Company and Nolo. Previous Terms and Conditions still apply. For Network Listings, Company will receive non-exclusive consumer inquiries and a non-exclusive listing for the practice areas and geographies noted below."]

| Practice Area | Counties | Average Quarterly Lead Volume | Past Leads | Price / Lead |
|---|---|---|---|---|
| DUI and DWI | California / Show 1 County | 95 | View | $61.00 |
| | Total Quarterly Lead Volume | 95 | | |

The phrase "Previous Terms and Conditions" is not defined and not hyperlinked. Below the table titled "Network campaigns and listing" in the Advertising Proposal, is a tick box stating, "I have read and accept the General Terms and Conditions for this contract." *Id.* at 30.

| | | | |
|---|---|---|---|
| Start Date | August 20, 2019 | Auto Renewal | Yes |
| Payment Type | Pay Per Lead | Renewal Amount | $1,220.00 |

☐ I have read and accept the General Terms and Conditions for this contract    [ACCEPT PROPOSAL]

The phrase "General Terms and Conditions" hyperlinks to a document titled "General Terms & Conditions," which states:

> These Terms and Conditions (these "Terms") are offered to you by Nolo and other related entities and affiliates ("Nolo", "we," "us," "our") govern our products and services ("Services"). These Terms, together with each Advertising Campaign ("Advertising Campaign") and any and all other policies and procedures related to the use of the Services, Nolo.com, or its affiliated websites, (collectively, the "Site") as updated from time to time by Nolo ("Additional Terms") constitute a binding, legal agreement between you and Nolo (collectively, the "Agreement").

Motion at 16; Stack Decl. ¶ 9; Dkt. No. 29-1 at 32 (Ex E. – General Terms and Conditions); Dkt. No. 34-2 at 5 (Ex. 1 – General Terms & Conditions). Section 13 of the General Terms and Conditions states: "This Agreement contains the final and entire agreement regarding your use of the Services and supersedes all previous and contemporaneous written agreements." Dkt. No. 29-1

1   at 34 (Ex E. – General Terms and Conditions). The General Terms and Conditions do not refer to

2   arbitration, but instead provide:

> Both parties agree that this Agreement, as well as any and all claims arising from this Agreement will be governed by and construed in accordance with the laws of the State of California, without reference to its conflicts of law rules, and the parties irrevocably submit to the exclusive jurisdiction and venue of the courts of Los Angeles County, California, and the Central District Court of California, respectively.

*Id.*

According to Martindale's records, Mr. Bindman accepted the contract on August 30, 2018. Dkt. No. 29-1 at 36 (Ex. F – Legal Advertising Proposal dated August 30, 2018). The record shows acceptance by IP address, as shown below. *Id.*



# Legal Advertising Proposal

Contract ID: 4806691
Contract Date: August 30, 2018

## Contact Information

| | | | |
|---|---|---|---|
| Company Name: | The Law Offices of Boris Bindman | Phone: | (415) 634-7040 |
| Address: | 725 Washington St<br>Ste 205<br>Oakland, CA 94607 | Email:<br>Website: | bindmanlaw@gmail.com<br>www.bindmanlaw.com |

## Lead Subscription

Company hereby agrees to the Advertising Campaign ("Advertising Campaign") and Fees and Payment ("Fees") for the specified duration ("Term") listed below. Included in all Advertising Campaigns is a profile page on the Nolo Network. All consumer inquiries will be collected by Nolo and stored in an online account, as well as sent via email notification. Company may place content ("Content") on their profile page that describes the Company, including biographies, articles, photos and links to the Company's website. At the end of the term, subscriptions with payment type 'Auto-Renewal' will automatically be renewed based on the billing cycle listed below.

### Network Listing

| County | State | Procedure | Price Per Lead |
|---|---|---|---|

## Payment Information

| | | | |
|---|---|---|---|
| Contract Start Date: | August 30, 2018 | Renewal Amount: | $1,044.00 |
| Payment Type: | Pay Per Lead | Amount Due Today: | $1,044.00 |
| Automatic Renewal: | Yes | | |

## Contract Acceptance

Contract accepted by IP: 10.16.144.162 on 2018-08-30 16:00:00 (see General Terms and Conditions)

5

Under the title "Contract Acceptance" in the record, are the words "General Terms and Conditions" with a hyperlink. *Id.*

After accepting the August 30, 2018 initial Advertising Campaign, Mr. Bindman revised his plan several times, changing the type and number of leads. Motion at 16. Each time Mr. Bindman received a new Advertising Proposal, like the one shown above, he clicked a check box to accept the General Terms and Conditions. *Id.*; *see also* Dkt. No. 29-1 at 38-40 (Ex. G – Legal Advertising Proposals dated January 2, 2019, February 21, 2019, and April 12, 2019 respectively). Plaintiff used the lead generation services from August 2018 until his cancellation in early May 2019. Motion at 17.

## LEGAL STANDARD

Arbitration is a matter of contract, and federal policy favors arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (citations omitted). In determining whether the parties here agreed to arbitrate, the Court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

"The Supreme Court has emphasized that the 'first principle' of its arbitration decisions is that '[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741-42 (9th Cir. 2014) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857 (2010)). When determining whether parties have agreed to arbitrate a particular dispute, courts should apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration, resolving ambiguities as to the scope of arbitration in favor of arbitration. *Id.* at 742; *see also AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986).

> This policy, however, "is merely an acknowledgment of the FAA's commitment to 'overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'" Accordingly, the Supreme Court "[has] never held that this policy overrides the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.' Nor [has the Court] held that courts may use policy considerations as a substitute for party agreement."

*Goldman, Sachs & Co.*, 747 F.3d at 742 (emphasis in original) (quoting *Granite Rock*, 130 S. Ct. at 2859).

**DISCUSSION**

On their face, (1) the Terms of Use agreed to by clicking "SUBMIT" at the bottom of Martindale's "Contact Us" Form contain an arbitration provision, and (2) the General Terms and Conditions agreed to via a click-box when accepting an Advertising Proposal do not. The parties dispute which of these two sets of terms govern the claims at issue. Martindale argues the Terms of Use apply and compel arbitration of all Mr. Bindman's claims. Motion at 10-32. In support, Martindale identifies language in the Terms of Use that states "any claim . . . regarding these Terms of Use or our sites and services will be resolved through binding arbitration." Dkt. No. 29-1 at 23 (Ex. B – Terms of Use).

Plaintiff argues the General Terms and Conditions apply. Opp'n at 13. Mr. Bindman points to language stating "[t]hese Terms and Conditions (these 'Terms') . . . govern our products and services ('Services')." Dkt. No. 29-1 at 32 (Ex. E – General Terms and Conditions). Plaintiff also argues that because the General Terms and Conditions contain an integration clause, reproduced below, they supplant the Terms of Use. Opp'n at 14. Indeed, the General Terms and Conditions state:

> This Agreement contains the final and entire agreement regarding your use of the Services and supersedes all previous and contemporaneous written agreements.

Dkt. No. 29-1 at 34 (Ex E. – General Terms and Conditions). The General Terms and Conditions also state:

> Both parties agree that this Agreement, as well as any and all claims arising from this Agreement will be governed by and construed in accordance with the laws of the State of California, without reference to its conflicts of law rules, and the parties irrevocably submit to the exclusive jurisdiction and venue of the courts of Los

7

Angeles County, California, and the Central District Court of California, respectively.

*Id.*

"Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Cal. Code Civ. Proc. § 1856(a). "[W]hen the parties intend a written agreement to be the final and complete expression of their understanding, that writing becomes the final contract between the parties." *EPA Real Estate Partnership v. Kang*, 12 Cal. App. 4th 171, 175 (1992). The Court concludes that the General Terms and Conditions, together with each Advertising Proposal, is the final expression of the parties' agreement.

Indeed, the Terms of Use contain language indicating their lack of permanence. For instance, the Terms of Use state "[i]f there is any conflict between this TOU [Terms of Use] and any supplemental terms to a site or service, the supplemental terms will control." Dkt. No. 29-1 at 16 (Ex. B – Terms of Use). The Terms of Use also provide that "[t]his TOU does not apply to those sites and services that do not display or link to this TOU, or that have their own terms of use." *Id.* The phrase "their own terms of use" is not defined and could be construed as the General Terms and Conditions read and accepted with each Advertising Proposal.

Martindale argues that the Advertising Proposal incorporates the Terms of Use because it states that "Previous Terms and Conditions still apply." Motion at 28; Dkt. No. 38 at 16 ("Reply"). Although in all capital letters, no document defines the phrase "Previous Terms and Conditions." Nor are the Terms of Use hyperlinked via the text of "Previous Terms and Conditions." The Court finds these facts attenuate the argument that the phrase "Previous Terms and Conditions" references the Terms of Use.

Martindale further argues that the language in the General Terms and Conditions about "any and all other policies and procedures related to the use of the Services, Nolo.com, or its affiliated websites" refers to the Terms of Use. Motion at 29; Reply at 16 n.8. Again, the phrase "other policies and procedures" is undefined and does not explicitly reference the Terms of Use. The Court agrees with plaintiff that ambiguity in this instance should be construed against the drafter,

8

Martindale. *See* Cal. Civ. Code § 1654 ("In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.").

Therefore, the Court declines to compel arbitration of Mr. Bindman's claims in this case. Accordingly, Martindale's Motion is DENIED.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion to compel arbitration.

**IT IS SO ORDERED**.

Dated: December 17, 2019

SUSAN ILLSTON
United States District Judge